**BECK CHEVROLET CO., INC.,**
**Plaintiff–Appellant-Cross-**
**Appellee,**

v.

**GENERAL MOTORS LLC,** Defendant–
Appellee-Cross-Appellant.

**Docket Nos. 13-4066, 13-4310**
**August Term, 2014**

United States Court of Appeals,
Second Circuit.

Argued: October 6, 2014

Final Submission: October 7, 2016

Decided: December 29, 2016

RUSSELL P. MCRORY, Arent Fox LLP, New York, New York, for Plaintiff–Appellant-Cross-Appellee.

JAMES C. MCGRATH, Seyfarth Shaw LLP, Boston, Massachusetts, for Defendant-Appellee-Cross-Appellant.

Before: SACK, LIVINGSTON, and LOHIER, Circuit Judges.

---

PER CURIAM:

This is the second occasion on which we are called upon to address the appeal of plaintiff-appellant Beck Chevrolet Co., Inc. ("Beck") from two judgments by the United States District Court for the Southern District of New York (Alvin K. Hellerstein, *Judge*) in favor of defendant-appellee General Motors LLC ("GM"). The underlying facts and procedural history of this case are set forth at length in *Beck Chevrolet Co., Inc. v. Gen. Motors LLC*, 787 F.3d 663, 666–71 (2d Cir. 2015) ("*Beck I*"). We repeat them here only insofar as we think it helpful to the reader in understanding the discussion that follows.

Beck initially appealed from the district court's (1) grant of summary of judgment for GM on Beck's claim seeking monetary relief under section 463(2)(a) of New York's Franchised Motor Vehicle Dealer Act (the "Dealer Act"), codified at N.Y. VEH. & TRAF. LAW §§ 460-473; (2) grant of summary judgment for GM on Beck's claim seeking injunctive relief under section 463(2)(ff) of the Dealer Act; (3) entry of judgment for GM, following a bench trial, on Beck's claim seeking injunctive relief under section 463(2)(gg) of the Dealer Act; and (3) denial of Beck's application for costs and attorney's fees. In our previous opinion in this matter, we affirmed the district court's grant of summary judgment dismissing Beck's section 463(2)(a) claim and its denial of Beck's fees application. *Beck I*, 787 F.3d at 678–79.[1] With respect to the district court's disposition of Beck's claims under sections 463(2)(gg) (prohibiting the "use [of] an unreasonable, arbitrary or unfair sales or other performance standard in determining a franchised motor vehicle dealer's compliance with a

franchise agreement") and 463(2)(ff) (prescribing limits on the ability of a franchisor to "modify the franchise of a[ ] franchised motor vehicle dealer"), however, we determined that "New York state law is insufficiently developed in these areas to enable us to predict with confidence how the New York Court of Appeals would resolve these questions." *Id.* at 666; *see also id.* at 672–78. We therefore certified to the Court of Appeals two questions concerning the proper scope and application of these Dealer Act provisions. *Id.* at 682.

The Court of Appeals accepted our certified questions and, on May 3, 2016, issued a response.[2] *Beck Chevrolet Co., Inc. v. Gen. Motors LLC*, 27 N.Y.3d 379, 33 N.Y.S.3d 829, 53 N.E.3d 706 (2016) ("*Beck II*"), *reargument denied*, 27 N.Y.3d 1187, 38 N.Y.S.3d 96, 59 N.E.3d 1208 (2016). Equipped with this guidance, we now return to the remaining issues on appeal.

## I. Reasonableness of GM's Performance Standard

Section 463(2)(gg) of the Dealer Act provides that "[i]t shall be unlawful for any franchisor, notwithstanding the terms of any franchise contract ... [t]o use an unreasonable, arbitrary or unfair sales or other performance standard in determining a franchised motor vehicle dealer's compliance with a franchise agreement." N.Y. VEH. & TRAF. LAW § 463(2)(gg). Beck alleged that the statewide average GM uses to determine expected sales performance for its dealers (the "Retail Sales Index" or "RSI") is "unreasonable" and "unfair" because it adjusts for certain local characteristics, but does not account for local variations in brand popularity. The district court disagreed and, following a

1. We also affirmed the district court's dismissal of GM's counterclaim for rescission and the various evidentiary rulings challenged by the parties. *Beck I*, 787 F.3d at 679–81.

2. On October 7, 2016, the parties submitted supplemental letter briefs.

bench trial, ruled in GM's favor on Beck's claim for injunctive relief under this section.[3] Beck appealed.

Recognizing the competing policy considerations at issue and the absence of existing guidance from the New York Court of Appeals, we certified the following question for its determination:

> Is a performance standard that requires "average" performance based on statewide sales data in order for an automobile dealer to retain its dealership "unreasonable, arbitrary, or unfair" under New York Vehicle & Traffic Law section 463(2)(gg) because it does not account for local variations beyond adjusting for the local popularity of general vehicle types?

*Beck I*, 787 F.3d at 676; *see also id.* at 682.

At GM's request, the Court of Appeals reformulated the question to read:

> Is a performance standard that uses "average" performance based on statewide sales data in order to determine an automobile dealer's compliance with a franchise agreement "unreasonable, arbitrary or unfair" under New York Vehicle and Traffic Law § 463(2)(gg) because it does not account for local variations beyond adjusting for the local popularity of general vehicle types?

*Beck II*, 27 N.Y.3d at 389, 33 N.Y.S.3d at 835, 53 N.E.3d at 712.

The Court of Appeals answered the question thus reformulated in the affirmative. It reasoned that, "[a]t a minimum, [section] 463(2)(gg) forbids the use of stan-dards not based in fact or responsive to market forces because performance benchmarks that reflect a market different from the dealer's sales area cannot be reasonable or fair." *Id.* at 390–91, 33 N.Y.S.3d at 836, 53 N.E.3d at 713. Therefore, it instructed, "[t]o comply with the Dealer Act, if a franchisor intends to measure a dealer's performance based on a comparison to statewide data for other dealers, then the comparison data must take into account the market-based challenges that affect dealer success." *Id.* at 392, 33 N.Y.S.3d at 837, 53 N.E.3d at 714.

Applying these principles to the facts of this case, the Court of Appeals concluded that GM's RSI is unlawful:

> [O]nce GM determined that statewide raw data must be adjusted to account for customer preference as a measure of dealer sales performance, GM's exclusion of local brand popularity or import bias rendered the standard unreasonable and unfair because these preference factors constitute market challenges that impact a dealer's sales performance differently across the state. It is unlawful under section 463(2)(gg) to measure a dealer's sales performance by a standard that fails to consider the desirability of the Chevrolet brand itself as a measure of a dealer's effort and sales ability.

*Id.* at 391, 33 N.Y.S.3d at 837, 53 N.E.3d at 714.

In light of this ruling, the district court's judgment in favor of GM on Beck's section 463(2)(gg) claim must be reversed.[4] We

---

**3.** The district court also granted GM's motion for summary judgment on Beck's claim for damages under this section on the ground that Beck had not established damages in connection with this claim. Beck conceded that its section 463(2)(gg) claim "sound[s] in injunction, not money damages." Russell P. McCrory Decl. at ¶ 18, *Beck Chevrolet Co., Inc. v. Gen. Motors LLC*, No. 11-cv-2856 (S.D.N.Y. Mar. 19, 2012), ECF No. 45. We do not understand it to challenge this ruling on appeal.

**4.** GM argues that the Court of Appeals's decision is "not dispositive" of this issue because the Court of Appeals concluded only that it would be unlawful for GM to determine a dealer's compliance with its sales perform-

therefore reverse the district court's judgment and remand with a direction to enter judgment for Beck on this claim and to order injunctive relief consistent with the New York Court of Appeals's answer to our certified question. We leave it to the district court, in its discretion, to determine whether this decision justifies reconsideration of its denial of Beck's fees application.

## II. Modification of the Franchise Agreement

Beck also appeals from the district court's grant of summary judgment for GM on Beck's claim that changes to its Area of Geographic Sales and Service Advantage ("AGSSA") constituted an "unfair" "modification" of its franchise agreement, in violation of Dealer Act section 463(2)(ff). That section provides that it is

> unlawful for any franchisor, notwithstanding the terms of any franchise contract ... [t]o modify the franchise of any franchised motor vehicle dealer unless the franchisor notifies the ... dealer, in writing, ... at least ninety days before the effective date thereof, stating the specific grounds for such modification.

N.Y. Veh. & Traf. Law § 463(2)(ff)(1). It defines "modification" as "any change or replacement of any franchise if such change or replacement may substantially and adversely affect the new motor vehicle dealer's rights, obligations, investment or return on investment." *Id.* § 463(2)(ff)(2).

The Dealer Act permits a franchisee, upon receiving notice of an intended modification, to challenge the modification as "unfair," thereby shifting to the franchisor "the burden of proving that such modification is fair and not prohibited." *Id.* § 463(2)(ff)(3). "A modification is deemed unfair if it is not undertaken in good faith; is not undertaken for good cause; or would adversely and substantially alter the rights, obligations, investment or return on investment of the franchised motor vehicle dealer under an existing franchise agreement." *Id.*

The district court concluded that GM's revision of Beck's AGSSA did not constitute a "modification" of the franchise agreement because that agreement expressly reserved to GM the power to make such a revision. It denied Beck's claim for injunctive relief under section 463(2)(ff) on that basis. On review, we voiced skepticism as to whether the Dealer Act permits fran-

ance obligations based *solely* on the RSI, whereas the district court found that GM considers the RSI as well as "other relevant factors." Def. Supp. Letter Br. at 1-2, *Beck Chevrolet Co., Inc. v. Gen. Motors LLC*, No. 13-4066 (2d Cir. Oct. 7, 2016), ECF No. 159. But the Court of Appeals anticipated and rejected this argument by reformulating, and broadening, the question this Court certified to it. *See Beck II*, 27 N.Y.3d at 388-89, 33 N.Y.S.3d at 835, 53 N.E.3d at 712 (noting that "the first certified question [was] predicated on the incorrect presumption that GM terminates all dealers who have a below-average sales performance, when, in fact, GM bases termination on the RSI and other relevant factors"). Accordingly, the Court of Appeals determined that it is unlawful not only to terminate a dealer on the basis of a below-

average RSI, but also to "use" that standard—alone or in connection with other metrics—to assess an automobile dealer's compliance with its franchise agreement. *Id.* at 389, 391, 33 N.Y.S.3d at 835, 837, 53 N.E.3d at 712, 714.

GM also argues that the district court's factual findings show that GM's use of the RSI was fair and reasonable *"in this case."* Def. Supp. Letter Br. at 6, *Beck Chevrolet Co., Inc. v. Gen. Motors LLC*, No. 13-4066 (2d Cir. Oct. 7, 2016), ECF No. 159 (emphasis in original). But the Court of Appeals eschewed such an "as-applied" analysis, concluding that the RSI is "facially unreasonable, arbitrary or unfair without reference to facts particular to any individual dealer." *Beck II*, 27 N.Y.3d at 389, 33 N.Y.S.3d at 835, 53 N.E.3d at 712.

chisors to thus circumvent the Act's protections by retaining unilateral discretion to revise specified elements of the franchise agreement. *See Beck I*, 787 F.3d at 677. Noting the absence of any state appellate court decisions indicating how the New York Court of Appeals would rule on this issue, we certified the following question for its determination:

> Does a change to a franchisee's Area of Primary Responsibility or AGSSA constitute a prohibited "modification" to the franchise under section 463(2)(ff), even though the standard terms of the Dealer Agreement reserve the franchisor's right to alter the Area of Primary Responsibility or AGSSA in its sole discretion?

*Id.* at 677–78; *see also id.* at 682.

The Court of Appeals responded that a change in the AGSSA constitutes a "modification ... to the franchise" within the meaning of section 463(2)(ff) because it "has the potential to significantly impact the franchise agreement." *Beck II*, 27 N.Y.3d at 395–96, 33 N.Y.S.3d at 839–40, 53 N.E.3d at 716–17. The Court of Appeals explained that "a franchisor may not insulate itself from the requirements and proscriptions of section 463(2)(ff) by contractually reserving in the [franchise agreement] the power to revise an AGSSA, as GM did in this case." *Id.* at 396, 33 N.Y.S.3d at 840, 53 N.E.3d at 717. "To the extent section 463(2) makes unlawful certain franchisor abuses, 'notwithstanding the terms of any franchise contract,' [it] abrogates contract principles which traditionally bind the parties to their agreements." *Id.* at 395, 33 N.Y.S.3d at 839–40, 53 N.E.3d at 716–17. "Otherwise," the Court of Appeals reasoned, "a franchisor with superior bargaining power could easily circumvent the purpose of the Dealer Act by reserving the right to change franchise terms at will, even where a change

results in significant adverse [e]ffects on the dealer." *Id.* at 396, 33 N.Y.S.3d at 840, 53 N.E.3d at 717.

That does not end the inquiry, however, because, as the Court of Appeals emphasized, section 463(2)(ff) prohibits only those modifications that " 'may substantially and adversely affect the new motor vehicle dealer's rights[, obligations, investment or return on investment.' " *Id.* (quoting N.Y. VEH. & TRAF. LAW § 463(2)(ff)(2)). Moreover, to be unlawful under the Dealer Act, a modification "must be deemed unfair, meaning 'it is not undertaken in good faith; is not undertaken for good cause; or would adversely and substantially alter the rights, obligations, investment or return on investment of the franchised motor vehicle dealer under an existing franchise agreement.' " *Id.* (quoting N.Y. VEH. & TRAF. LAW § 463(2)(ff)(3)). Therefore, the Court of Appeals concluded, "a revision of the AGSSA is not *perforce* violative of section 463(2)(ff). Rather, such change must be assessed on a case-by-case basis, upon consideration of the impact of the revision on a dealer's position." *Id.* at 397, 33 N.Y.S.3d at 840, 53 N.E.3d at 717 (emphasis added).

GM acknowledges that the Court of Appeals's answer to our certified question undermines the legal basis for the district court's dismissal of Beck's section 463(2)(ff) claim. *See* Def.'s Supp. Letter Br. at 7 n.3, *Beck Chevrolet Co., Inc. v. Gen. Motors LLC*, No. 13–4066 (2d Cir. Oct. 7, 2016), ECF No. 159. GM argues that we should nonetheless affirm the entry of summary judgment in its favor because "Beck failed to offer any evidence suggesting that GM's [revision of its AGSSA] ... was undertaken in bad faith or without good cause, or would substantially and adversely affect[ ] Beck's interests." *Id.* at 7. But because the district court concluded that GM's revision of the AGSSA was not a franchise "modification"

within the meaning of the Dealer Act, it did not determine whether that modification was "unfair" and thus prohibited by the statute. We therefore vacate the district court's judgment and remand for it to resolve this issue in the first instance, consistent with the legal principles set forth in the New York Court of Appeals's answer to our second certified question. *See Prats v. Port Auth. of N.Y. & N.J.*, 350 F.3d 58, 59 (2d Cir. 2003) ("As a general rule, 'a federal appellate court does not consider an issue not passed upon' by the district court." (quoting *SEC v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999))).

We express no view on how the district court should resolve this matter. We merely conclude that, in light of the New York Court of Appeals's answer to our certified question, the district court's judgment can no longer stand. Should this matter come before this Court again, the Court will review the district court's decision under the ordinarily applicable standards of deference.

## CONCLUSION

For the foregoing reasons, we RE-VERSE the district court's judgment in favor of GM on Beck's section 463(2)(gg) claim, VACATE the district court's judgment in favor of GM on Beck's section 463(2)(ff) claim, and REMAND to that court for further proceedings and the entry of judgment consistent with this opinion and the New York Court of Appeals's answers to our certified questions.